NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KAITLYN LAWRENCE,

        Plaintiff - Appellee,

v.

FINICITY CORPORATION,

        Defendant - Appellant.

No. 24-1737

D.C. No.
2:23-cv-01005-DJC-AC

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted February 10, 2025
San Francisco, California

Before: OWENS, VANDYKE, and JOHNSTONE, Circuit Judges.

Finicity Corporation ("Finicity"), a wholly owned subsidiary of Mastercard, appeals from the district court's denial of its motion to compel arbitration due to Finicity's purported failure to provide reasonably conspicuous notice of its terms and conditions. As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B) and review the district

---

    *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

court's decision de novo. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). We reverse and remand for further proceedings.

If an enforceable arbitration agreement exists, federal courts must "order the parties to proceed to arbitration in accordance with the terms of the agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (citing 9 U.S.C. § 4). To determine whether the parties formed a valid arbitration agreement, "federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). California law requires "mutual consent of the parties" to form a contract. *Doe v. Massage Envy Franchising, LLC*, 303 Cal. Rptr. 3d 269, 274 (Cal. Ct. App. 2022). "This principle of knowing consent applies with particular force to . . . arbitration provisions contained in contracts purportedly formed over the internet." *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 12 (Cal. Ct. App. 2021) (internal citation omitted).

Without evidence of Lawrence's actual notice of the arbitration provision, Finicity relies on an inquiry notice theory of contract formation. To succeed on this theory, Finicity must show that it provided users with "reasonably conspicuous notice of the existence of the terms to which they were to be bound," *Herzog v. Superior Ct.*, 321 Cal. Rptr. 3d 93, 107 (Cal. Ct. App. 2024), and that the consumer took some action—such as clicking "Next"—that unambiguously manifested her

assent to those terms, *see Berman*, 30 F.4th at 856.  After reviewing the record de novo, we conclude that Finicity satisfied these requirements.

To assess conspicuousness, courts first consider "the full context of the transaction . . . to determin[e] whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms."  *Sellers*, 289 Cal. Rptr. 3d at 26.  Courts specifically evaluate whether the transaction is one that a reasonable consumer would expect to lead to a "continuing, forward-looking relationship" governed by terms.  *Id*. at 22.  The context of the transaction is a "non-dispositive factor under California law," however, so courts must consider it alongside "the visual aspects of the notice."  *Keebaugh*, 100 F.4th at 1019.  Relevant visual criteria include the size of the textual notice, its color "as compared to the background it appears against," "its proximity to any box or button the user must click to continue use of the website," "the obviousness of any associated hyperlink," and "whether other elements on the screen clutter or otherwise obscure the textual notice."  *Sellers*, 289 Cal. Rptr. 3d at 23.

Here, Finicity clearly alerts consumers to its role in the transaction as soon as it arises.  The disclosure page features clear text identifying Finicity as the service provider ("We use Finicity, a Mastercard company, to gather data from PNC Bank."); images depicting Mastercard as the middleman for the requested service; notice language further underscoring Finicity's involvement; and a

3                                                                                                    24-1737

different color scheme and format than the rest of the EveryDollar app, signaling the involvement of a new party. These features mitigate concerns that Finicity, acting as an intermediary for a prepaid service, will fly under the consumer's radar.

Once alerted to Finicity's role in the transaction, a reasonable consumer would expect to have "'a continuing, forward-looking relationship'" with the entity they are entrusting with their bank data to track their account over time. *Keebaugh*, 100 F.4th at 1017 (quoting *B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 64 (Cal. Ct. App. 2022)). The disclosure page's visual elements also contain many hallmarks of conspicuous notice. The page is uncluttered, and the hyperlinks are bright orange against a white background. Additionally, the notice language is not "buried" but rather "located directly on top of . . . [the] action button" in reasonably sized black font. *Oberstein*, 60 F.4th at 517.

Thus, considering both the transactional context and the disclosure page's visual presentation, we conclude that Finicity provided reasonably conspicuous notice of its terms. Additionally, because Plaintiff was "explicitly advised" that clicking "Next" would constitute agreement to Finicity's terms, she unambiguously manifested her assent to those terms by doing so. *See Berman*, 30 F.4th at 857. We leave Plaintiff's claim of insufficient consideration to the district court to decide in the first instance.

**REVERSED AND REMANDED**.